IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 14, 2012

**CHRIS BROWN v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No.  05-05633, 06-02283     W. Otis Higgs, Jr., Judge**

_____

**No. W2011-01084-CCA-R3-PC  - Filed August 24, 2012**

_____

The Petitioner, Chris Brown, appeals from the Shelby County Criminal Court's denial of post-conviction relief from his convictions for attempted first degree murder, especially aggravated robbery, aggravated robbery, attempted aggravated robbery, two counts of aggravated assault, and being a felon in possession of a handgun, for which he is serving an effective twenty-year sentence. On appeal, the Petitioner contends that his guilty pleas were not knowingly, voluntarily, and understandingly made. We affirm the judgment of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Sean H. Muizers (on appeal) and Eran E. Julian (at post-conviction hearing), Memphis, Tennessee, for the appellant, Chris Brown.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Steve Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

According to the State's recitation of the facts at the guilty plea hearing:

> Under the [05-05633] indictment, had the defendant gone to trial the State would [have] shown that on May the 15th of 2005, Fred Brown pulled up to 704 Marble which is located in Memphis, Shelby County. He spoke with the victim . . . , Charles Mitchell. He asked the whereabouts of another individual and Mr. Mitchell told him that that individual he believed was around back at which time Mr. Brown went around back and disappeared. Mr. Mitchell went back in the house. A few minutes later Mr. Mitchell heard another knock on his door. He returned to his door. Mr. Brown was standing there again. He asked Mr. Mitchell to step outside to talk to him for a minute. When Mr. Mitchell did, Mr. Brown pulled a sawed-off 410 pump-action shotgun from behind his back and immediately shot Mr. Mitchell before taking off in a 1980 model red Grand Am at which time he apparently drove approximately one half of a mile to 707 North Fifth Street where Mr. Fred Taylor was sitting and talking to a Leo Beasley at a picnic table in a yard near an abandoned house.
>
> When Mr. Taylor saw Mr. Brown pull up, he believed that he was on drugs as he had seen him in the neighborhood and he decided to leave and advised Mr. Beasley that he should leave as well. As he was about to turn and part from Mr. Beasley's company, Mr. Brown approached Mr. Taylor and said hi. Mr. Taylor and Mr. Brown shook hands. Mr. Taylor turned around, started to leave, at which time Mr. Brown pulled a sawed-off 410 pump action shotgun out and said something to Mr. Taylor about that was not right what you did. Mr. Taylor turned around, put his hands up in the air and said I don't know what you're talking about. He looked at Mr. Brown's eyes and was convinced that Mr. Brown was about to shoot him. He made an attempt to grab the weapon at which time there was a struggle. The gun did fire. Mr. Taylor's thumb got caught in the lever action and was injured at that time. Mr. Taylor then let go of the gun thinking that he was no longer in danger, at which time Mr. Brown apparently had a pump action and attempted to

reload the weapon. Mr. Taylor saw the shell jam in the lever action and ran and was not shot at again.

In the [06-00283] indictment, had Mr. Brown gone to trial in that matter, the State would [have] shown that on May the 2nd of 2005, Mr. Brown along with a Fredrick Manuel who apparently is his cousin or some relative of his, did go to a set of apartments located in Memphis, Shelby County and approach a Reginald Walker. Mr. Walker was told to get on the ground. He was robbed of jewelry and some money at which time apparently some dispute arose and the co-defendant, Mr. Manuel, did shoot Mr. Walker several times as he lay on the ground.

Mr. Manuel and Mr. Brown then left the area and as they were walking through the apartment complex did run into two teenage boys . . . . I believe their ages were 14 and 15 at the time. Mr. Brown approached these two boys, demanded money from them. Only [one of the boys] had any money. He gave . . . Mr. Brown his cell phone and the $2 that he had on his person. The other young man didn't have any money. Both boys were pistol whipped. They were taken up to the top of a hill where Mr. Brown's vehicle was but Mr. Brown did go to leave without putting them in the vehicle though he threatened to kidnap both boys.

The police arrived on the scene. Mr. Manuel and Mr. Brown both took off running. Mr. Manuel was captured, throwing the gun away. Mr. Brown was not but information was obtained from Mr. Manuel and evidence at the scene . . . implicated Mr. Brown and he was identified by the victims as the individual who had participated in all these offense[s].

With regard to the plea agreement, trial counsel commented at the guilty plea hearing:

Your Honor, . . . there are some issues that could [have] possibly been raised individually, however, these cases being tried together in my professional opinion would have almost assuredly resulted in my client's conviction. And as I explained to him and as I've told him, we would [have] had two courses of

defense in this particular case. It would [have] either been he didn't do it which would [have] been difficult without any proof and given the fact that three witnesses, possibly four but three that I know of for sure, who were going to place Mr. Brown at the scene and two of whom knew him from the neighborhood. The other one as we stated in the motion, did not identify my client at the [preliminary hearing] but he [picked] him out of a photo lineup and as I voir dired him I fully expected him to point him out here today in light of the fact he was the only one here, would be the only one seated here. I would [have] made those arguments however.

And also either argued it wasn't him or argued that if it was him it wasn't an attempted murder one. In my opinion that would [have] been really hard given the fact that one of the persons [was] shot, given the fact that Mr. Taylor is going to testify that not only the fight with him over the gun struggle and the gun went off, it appears slightly – injuring his thumb. We do have a picture of a slightly blood covered thumb. But also given the fact that he would testify, and again, we would have nothing to contradict this.

That he was going to testify that he took a shotgun and attempted to shoot him, pulled the pump rather or whatever [sic]. He was trying to shoot him and the gun jammed. That would [have] been the testimony that he said both at the preliminary hearing and his prior statement that we would [have] expected to be heard here today. . . . I think [that would have] been strong proof of premeditated murder or murder second in the very least. And given the fact that two people are shot 10 minutes apart I think goes . . . heavily to premeditation. So we would [have] been in a case where we would [have] been arguing that my client was either not guilty, didn't do this, or that he did do it but they were simply agg[ravated] assaults. If they were agg[ravated] assaults, then my client would have been facing 20 years just on this case alone in my opinion with him being Range II and having four prior felonies. I think it's pretty clear that these being two separate [incidents] that they almost certainly would have run consecutively.

-4-

[T]hat would have been considered a win to get 20 years on an agg[ravated] assault. If we had failed, . . . he would [have] been facing either attempt[ed] murder one or one count of attempt[ed] murder one and agg[ravated] assault or . . . two counts of attempt[ed] murder one, however the jury wanted to come down with it. If convicted of that, he was looking at as much as 50 years and whatever sentence he would [have] received they would have surely . . . run consecutively and also in my opinion based on his prior record and history and being a Range II on offenses below a Class A.

And also given that fact with that sentence that he would [have] still been facing some rather horrific charges in our second trial. . . . [E]ven if . . . he only got 20 years on those two counts of aggravated assault or if we got 50 years on murder one or anything in between then we'd still be facing this other trial. However it would [have] come out, I think clearly this in my opinion and I advised Mr. Brown of this, regardless of the offer, it's not the offer that we had and regardless of the fact that it's not what he may have wanted, it clearly is in his best interest given the facts and the position that he's in. And I frankly cannot see an outcome better than what he's pleading today if we were to go forward given these two cases and the case coming up and, frankly, just on this case alone what his potential is and what he's looking at.

Also my client brought up the issue and I think I've explained this to him, wanting to know why he couldn't plead to the five years on the aggravated assault since he's pleading to aggravated assault on this case and just go to trial on the other case. Well, as I've explained to him that the State is not the offer. [sic] The only way that's an offer is if we plead to everything and we're getting rid of everything and otherwise that would be revoked. And he cannot plead piecemeal to these charges and I've explained that to him as well. And if he has any other questions I would defer to the Court on those.

At the guilty plea hearing, the trial court questioned the Petitioner about his understanding of the charges, the terms of the plea agreement, his rights, the ranges of punishment for the offenses, concurrent versus consecutive sentences, his desire to plead

guilty, any threats or promises to induce the pleas, and his satisfaction with trial counsel's services. The Petitioner indicated his understanding, the lack of any threats or promises, his satisfaction with counsel, and his desire to enter the pleas. The court accepted the pleas and judgments were entered.

The Petitioner filed a timely post-conviction petition alleging that his guilty pleas were not voluntary because the trial court had information that the Petitioner's co-defendant made a statement claiming sole responsibility for shooting the victim, that the State failed to disclose the favorable evidence of the co-defendant's statement, and that he was not afforded the effective assistance of counsel in the conviction proceedings. Counsel was appointed, who filed an amended petition that incorporated the existing allegations but made no additional allegations.

At the post-conviction hearing, the Petitioner testified that trial counsel briefly visited him at the jail three times in one and one-half years, although counsel also met with him about three times on court dates. He said he wrote to counsel about filing motions but that counsel never responded. He said he never received a discovery package. He said he did not want to plead guilty and wanted to prove his innocence at a trial. He said that he told counsel of his desire but that counsel wanted him to accept the plea offer. He said counsel always encouraged him to accept the offers that were made. He said that he had some papers from his cousin, who was his co-defendant, and that he tried to talk to counsel about the case. Counsel said, however, that he had no defense and might receive consecutive sentences if he went to trial. He said that counsel had no interest in his case and that they argued when they met. He said that he asked counsel to have an investigator talk to the victim but that to his knowledge, it was never done. He read something stating the victim claimed he was shot but not robbed. He said that due to counsel's attitude, he felt like he had no choice but to plead guilty. He stated that he was pressured, that he had no knowledge of the law, and that he did what counsel told him to do after becoming emotionally and physically exhausted. He never considered accepting the State's thirteen and one-half year offer because he was not guilty and knew he could have prevailed at a trial.

On cross-examination, the Petitioner testified that he pled guilty on the trial date. He agreed trial counsel filed and argued a motion to sever the offenses. He acknowledged his answers to the trial court's questions at the plea hearing, as reflected in the transcript of that hearing. He said it was true on paper but not in his head that he told the court he was satisfied with counsel. On redirect examination, he said he told the court he was satisfied because he was going along with what counsel told him to do.

Trial counsel testified that he had requested the Petitioner's file through the public defender's office but that he did not have it and did not know its whereabouts. He could not

recall whether the Petitioner's case was set for trial. He said the Petitioner had two cases. The first involved an aggravated assault charge, and the second involved an attempted first degree murder charge. He said the incidents were alleged to have occurred minutes apart. He thought an aggravated assault charge was dismissed at the preliminary hearing after the victim failed to identify the Petitioner.

Trial counsel testified that he received witnesses' statements from the State early in the case. He did not recall if he interviewed the witnesses. He did not recall how many times he met with the Petitioner at the jail and had no basis to question the Petitioner's testimony about three meetings. He said he may have proposed an offer of thirteen and one-half years to the State but doubted that the State made an offer that low. He knew that thirteen and one-half years was the best offer he could obtain for the charges. He thought the victims opposed the plea agreement that was ultimately reached.

Trial counsel thought he received letters from the Petitioner. He said he filed the motions he thought were appropriate. He said that by the day of the guilty plea, he and the Petitioner had discussed "many times" the facts, the evidence, and the problems of the case. He said that there was no issue regarding identity in the attempted murder case and that this was a serious problem.

On cross-examination, trial counsel testified that he had represented defendants in seventy-five to eighty or more major felony cases. He said it was a defendant's choice to plead guilty. He said that based upon his experience, he thought the trial judge would have imposed lengthy, consecutive sentences. He agreed that the Petitioner faced a possible sentence of at least twenty years on one of the cases. He said that with regard to the case that was set for trial on the day the Petitioner pled guilty, the Petitioner would not be eligible for parole if he were convicted of especially aggravated robbery. He thought the Petitioner understood the motion to sever and knew which case was going to trial that day. He said that he filed motions based upon his professional judgment, not merely a client's wishes. He said he discussed the motions with his clients, but on redirect examination, he said it was possible he did not speak with the Petitioner about the motions.

The trial court found that the Petitioner failed to present any proof that the trial court knew about the co-defendant's being solely responsible for the crimes and that he failed to identify any evidence that was not disclosed by the State or to prove that it was not disclosed. The court concluded that the Petitioner received the effective assistance of counsel in the conviction proceedings. The court found that the guilty pleas were not unlawfully induced and denied relief. This appeal followed.

The Petitioner contends that he did not knowingly, voluntarily, and understandingly enter his guilty pleas. He argues that trial counsel pressured him to plead guilty and that he did not understand the charges for which he was to be tried on the day of the plea. The State contends that the Petitioner waived the issue of whether counsel coerced him because he never specifically raised it in the trial court, and that in any event, he failed to carry his burden of proving his claim. We conclude that the Petitioner is not entitled to relief.

We begin by addressing the State's argument that the Petitioner did not raise in the trial court the issue of whether trial counsel coerced him into accepting the plea. The pro se petition alleged that the Petitioner's guilty pleas were unlawfully induced because the trial court knew the Petitioner's co-defendant admitted sole responsibility for shooting the victim and as such, the court had no factual basis for accepting the plea. The pro se petition also alleged that "the Petitioner was induced to enter an unlawful 'guilty plea' despite his repeated attempts to aid and assist counsel with facts relevant to his case that would change the outcome, if presented in a timely fashion[.]" The petition alleged various shortcomings of counsel in failing to prepare the case for trial, although it did not specifically allege that counsel pressured or coerced him to plead guilty. We note that post-conviction counsel elected not to clarify the pro se allegations in the amended petition. We conclude that the petition sufficiently raised an issue of whether the pleas were induced by the ineffective assistance of counsel.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2006).

If a petitioner establishes the fact of counsel's errors, the trial court must determine whether those errors resulted in the ineffective assistance of counsel. Dellinger v. State, 279 S.W.3d 282, 293 (Tenn. 2009); see Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Fields, 40 S.W.3d at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland, 466 U.S. at 687; see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. When a petitioner pleads guilty, he must show a reasonable probability that, but for the errors of his counsel, he would not have pled guilty. See Hill v. Lockhart, 474 U.S. 52, 59 (1985); Adkins v. State, 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994).

Our supreme court has held that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). See id. Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982); see DeCoster, 487 F.2d at 1201.

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. See State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). The circumstances include:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to

> confer with counsel about the options available to him; the
> extent of advice from counsel and the court concerning the
> charges against him; and the reasons for his decision to plead
> guilty, including a desire to avoid a greater penalty that might
> result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993); see also Caudill v. Jago, 747 F.2d 1046, 1050-52 (6th Cir. 1984). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." Blankenship, 858 S.W.2d at 904 (citing Boykin v. Alabama, 395 U.S. 238, 242-43 (1969)).

The trial court is charged with determining if the guilty plea is "knowing" by questioning the defendant to ensure that he or she fully understands the plea and its consequences. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999) (citing Boykin, 395 U.S. at 243-44). In Boykin, the United States Supreme Court stated that certain constitutional rights are implicated in a plea of guilty, namely, the right to a trial by jury, the right to confront witnesses, and the privilege against compelled self-incrimination, and that it would not presume a waiver of these three important rights from a silent record. 395 U.S. 238, 243 (1969). Rule 11(b) of the Tennessee Rules of Criminal Procedure outlines advice to be given to a defendant entering a plea and explicit procedures for ensuring on the record that guilty pleas are voluntarily and understandingly made. However, only the constitutionally grounded rights stated in Boykin are addressable, per se, under the Post-Conviction Procedure Act. See State v. Prince, 781 S.W.2d 846, 853 (Tenn. 1989).

The trial court found that the Petitioner failed to prove that trial counsel provided ineffective assistance. Counsel testified that he reviewed the facts and the evidence with the Petitioner, that he pursued the motion to sever, and that the Petitioner was in a very bad situation and was best served by accepting the plea offer, rather than by going to trial. He said it was likely the Petitioner would receive a more lengthy sentence if he did not accept the plea offer. The court also found that the transcript of the guilty plea hearing demonstrated that the pleas were not unlawfully induced. The transcript of the guilty plea hearing reflects that the Petitioner indicated his understanding of the charges, the plea agreement, and his rights. He confirmed that he was satisfied with counsel's representation, that there were no threats or promises involved in his acceptance of the plea, and that it was his decision and desire to plead guilty. We conclude that the record supports the trial court's denial of relief.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE